in the one case, but not in the other, I would ask, upon what principle could the legislature *intend to make the distinction?*

It was said at the bar, that as the house containing the sugar might be burnt down, or the sugar might melt, the legislature did not mean to impose the duty whilst it remained liable to those accidents. I ask, are not distilled spirits subject to the same perils? But the conclusive answer is, that though the duty had once accrued, and had become a debt due, yet it cannot be demanded if it be destroyed before removal, because the event, upon which the solvendum is made to depend, can never happen. It was said there were two contingencies, viz., refining and sending out, both of which must happen before the duty accrues. I admit there are two contingencies, on the happening of one of which the duty accrues, to be demanded when the other shall happen. If this construction of the act of 1794 be correct, it furnishes a ready answer to many of the ingenious arguments used by the defendant's counsel. For then the remedy is not gone, but preserved by the repealing law, and of course the right remains. The repealing law, which professes to discontinue the internal taxes, is not, under such a construction, broader than the law which imposed those taxes.

As to the argument, that according to this construction, it would be in the power of the sugar refiners, by keeping on hand a small portion of refined sugar, to impose upon the government the necessity of keeping in office a number of officers, upon salaries. to collect the duties; there are two answers.—First, that the sugar refiners could have no motive for such conduct, and therefore it is not to be presumed; but secondly. the president is authorized to diminish the number of those officers, to any number he may think proper to retain. by consolidating the districts. Judgment for plaintiff.

This case was taken by writ of error to the supreme court of the United States, and the judgment of the circuit court was reversed [Penington v. Coxe] 2 Cranch [6 U. S.] 33 [the court holding, Mr. Chief Justice Marshall delivering the opinion, that sugar sent out of the factory prior to July 1, 1802, but not sold, was not liable to the duty].

COYLE (BRENT v.).   See Cases Nos. 1,837 and 1,838.

COYLE (DYER v.).   See Case No. 4,223.

## Case No. 3,312.

COYLE v. GOZZLER.

[2 Cranch, C. C. 625.] [1]

Circuit Court, District of Columbia.   Dec. Term, 1825.

ACTION ON NOTE—PLEADING AND PROOF—DEMAND—PROTEST—CUSTOM.

1. A note payable in sixty days, "with interest from date," will not support a declaration

[1] [Reported by Hon. William Cranch, Chief Judge.]

upon a note payable in sixty days without interest.

2. If an intermediate indorsement is averred in the declaration, it must be proved at the trial,. although the suit is brought for the use of such intermediate indorser.

3. If the notary-public has no memorandum nor recollection of the day of demand and notice, but has a memorandum in his book that demand was made and notice given to the indorsers, and testifies that it was his universal practice to make the demand and give notice on the day after the last day of grace, such testimony is competent evidence for the consideration of the jury.

4. A special custom of the banks and merchants of the county of Washington, to demand payment on the day after the last day of grace, may be given in evidence without being averred in the declaration.

[See Auld v. Mandeville, Case No. 653.]

At law.   Assumpsit against the indorser of Stull and Williams's note at sixty days,. dated 21 October, 1816.

J. Dunlop, for defendant, at the trial at May term, 1825, objected to the note offered in evidence by the plaintiff, because it had the words, "with interest from date," which words were not in the note described in the declaration; and he contended also that the handwriting of the intermediate indorsement must be proved; as the indorsement was averred in the declaration.   He also objected that the testimony of Mr. R. Johns, the notary-public, was not competent to go to the jury.   Mr. Johns testified that he did not then recollect, nor had he any minute in his book, of the time when he gave notice to the indorser; but it contains a memorandum that notice was given to the indorsers, as well as a memorandum of the demand.   And he further testified that it was his universal practice to give notice on the day on which he made the demand, which was on the 24th of December, which was the day after the last day of grace; and that he believes he gave the notice on that day.

THE COURT decided that his testimony was competent evidence for the consideration of the jury.   That as the declaration averred an intermediate indorsement, it must be proved, although it was proved that the indorsement was made after the note had become payable, and that the suit was brought for the use of that intermediate indorser; and that the variance between the note produced in evidence and that described in·the declaration, was fatal, as it could not be given in evidence upon that declaration.

A juror was then withdrawn and the plaintiff had leave to amend; and the cause was continued, without costs.   MORSELL, Circuit Judge, dissenting as to the continuance.

The cause came on again for trial at the present term, when Mr. Ashton, for plaintiff, offered evidence of the particular custom of the banks and merchants in the county of Washington, to demand payment of the maker, and to protest and give notice to the indorsers, on the day after the last day of grace. •

Mr. Key, for defendant, objected to such evidence, because there was not, in the declaration, any averment of such a custom, and referred the court to the case of Renner v. Bank of Columbia (in the supreme court of the United States) 9 Wheat. [22 U. S.] 581.

THE COURT (THRUSTON, Circuit Judge, absent) permitted the evidence to be given. The declaration stated the demand and notice to have been made and given on the 24th of December, 1816, which was the day after the last day of grace.

———

COYLE (LEACH v.). See Case No. 8,156.

———

## Case No. 3,312a.

### COYNE v. The ALEXANDER McNEIL.

[20 Int. Rev. Rec. 176.]

District Court, S. D. Georgia. Aug. Term, 1874.

#### MARITIME LIENS—STEVEDORES.

[Stevedores have no lien on a vessel for stowing or discharging a cargo.]

[In admiralty. Libel by Michael Coyne against the bark Alexander McNeil for wages.]

Mr. Guerard, for libellant.

Jackson Lawton and Mr. Bassenger, for intervenors.

ERSKINE, District Judge. On the 13th of July, 1874, Coyne filed a libel in rem against the bark Alexander McNeil, of New York, then lying in the port of Savannah. The libel states that, the bark being ready to receive cargo, G. W. Leach, her master, made a contract with libellant, as a stevedore, to stow a cargo of cotton and staves, the former at 60 cents per bale, the latter at———per M, on said bark; that he has received for his said labor $298.50, and that there is still due and owing to him by said bark, as stevedore, $940.70; he prays process, and asks that the bark be condemned and forfeited, etc. To this Schuchardt & Sons, of New York, interpose a claim as mortgagees of said bark, alleging that Coyne has shown no lien on her, nor has he any lien, and they pray that as the vessel is about to be sold by order of this court, the proceeds of such sale be adjudged to them to the exclusion of Coyne, etc. Nothing further in the pleadings need be presented. The proofs show that the master of the bark did make a contract with libellant, as stevedore, to stow the cargo at certain named rates; that Coyne performed the work, and received $300 as in part payment, which he credited to the bark. The master admitted the correctness of the account, but said he had no money to pay Coyne, and that he must get it from the vessel.

The constitution of the United States gives the federal judiciary cognizance of "all cases of admiralty and maritime jurisdiction," and the ninth section of the judiciary act of 1789 [1 Stat. 77] vested in the district courts exclusive original cognizance of civil cases in admiralty and maritime jurisdiction. Taking what I have just said as a point of departure, is the libellant properly here? That his claim is meritorious no one can doubt; but can it be asserted by a suit in rem? In other words, is his demand, under the general rules of maritime law, a lien or privilege in the thing,—the vessel,—for, if it is, it will follow the proceeds arising from the sale of the res. Mr. Guerard contended for libellant that the views expressed by Dr. Benedict in his work on admiralty (2d Ed. § 285), that the services performed by stevedores are maritime, and may be enforced by suit in rem, against the vessel, ·or in personam against the master or owner; that the same principle which allows the sailor, and him that sets up her rigging, or paints her sides, to resort to the admiralty, will also allow the same privilege to stevedores. Ethically speaking, there is much in what the learned author advances, but he presents no authority upholding his theory, and none was referred to by the advocate. And so far as my own information extends, courts of admiralty have hitherto held that stevedores have no lien on the vessel for stowing or discharging her cargo; that they are merely laborers, like the draymen who haul the cargo to or from the ship, or the 'longshoremen who hoist it in or out.

I have but three cases before me on this immediate subject, in each of which it was decided that stevedores have no lien for their services on the vessel. In the case of The Amstel [Case No. 339], which was a libel in rem by a stevedore for his services in discharging her, Betts, J., said: "The libellant has no lien upon the vessel, because his services as a stevedore were not in their nature maritime, and were really performed on land. It is to be remarked that the services consisted of nothing done to the vessel in her repairing or refitment, but of labor expended, partly on board and partly on shore, in discharging her cargo. This description of service has never yet been recognized as of a privileged order. It does not fall within the extensive list of debts privileged by the civil law; nor does it seem to be comprehended within the principle upon which a lien of privilege is allowed." And the rule announced in that case was repeated in the case of The Joseph Cunard [Case No. 7,535]. The third case was that of McDermot v. [The] S. G. Owens [Case No. 8,748], before Mr. Justice Grier, of the supreme court of the United States. The libellant claimed a lien for labor and for services as a stevedore in loading and storing the cargo of the vessel. Grier, J., said: "The argument of the libellant's counsel is ingenious, but it wants the support of authority. No decision or